NELSON P. COHEN
United States Attorney

STEVEN E. SKROCKI
Assistant U.S. Attorney

ROBERT S. ANDERSON
Senior Trial Attorney
U.S. Department of Justice
Environmental Crimes Section
Environment and Natural Resources Division

Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:07-cr-00005-JDR |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| PRINCESS CRUISE LINES, | |
| Defendant. | |

## I. Introduction

### A. *Summary*

This brief introduction sets forth a summary of the terms of the plea agreement between Princess Cruise Lines ("Princess") and the United States. This summary is not intended to supersede the language that follows this subsection.

Princess agrees to plead guilty to the following charges set forth in the Information in this case:

> Count 1: Knowingly failing to operate its vessel the Dawn Princess at a slow, safe speed while near two humpback whales in the area of Glacier Bay, Alaska, in violation of Title 16, United States Code, Sections 1538(a)(1)(B) and 1540(b)(1), Title 50, Code of Federal Regulations Part 224.103(b)(3)

Princess also agrees to pay the maximum fine of $200,000, pay to the National Park Service Foundation the sum of $550,000 and to serve a term of one-year probation which will expire upon payment of the community service amount.

### B. *Complete Agreement.*

This document contains the complete plea agreement between the United States and Princess. The parties acknowledge the receipt of a letter from the United States Park Service by Princess regarding Princess Cruise Lines Permits in Glacier Bay and potential debarment issues which, while not part of this plea agreement, was an important consideration in Princess' plea of guilty. The defendant understands this agreement is limited to the District of Alaska; it does not bind other federal, state or local prosecuting authorities outside the District of Alaska.

### C. *Federal Rules of Criminal Procedure.*

The parties expressly agree that this plea agreement is entered into and is to be controlled by Federal Rules of Criminal Procedure 11(c)(1)(C). This means that Princess and the United States may withdraw from this agreement if the Court deviates from the sentencing agreement made by the United States and defense counsel. Thus, the parties understand that the court is bound by the parties sentencing agreement and must impose sentence in conformity with the terms of the plea agreement.

### D. *United States Sentencing Guidelines.*

This case arises out of conduct occurring after November 1, 1987 and as such is subject to calculation of an advisory sentence pursuant to the United States Sentencing Commission Guidelines (U.S.S.G.).

### E. *Corporate Authorization*

Princess will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors with both notary and corporate seals, certifying that Princess is authorized to plead guilty to the charge as set forth in the Information, and to enter into and comply with all provisions of this agreement. The resolution shall further certify that the President or its designees are authorized to take these actions and that all corporate formalities, including, but not limited to, approval by Princess's directors, required for such authorization, have been observed. Princess agrees that the President or a designated senior executive of

Princess shall appear on behalf of Princess to enter the guilty plea and also shall appear for imposition of sentence.

### F. *Attorney's Fees and Costs.*

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney's fees and costs from the other party.

## II. What the Defendant Agrees to Do

Princess agrees the following obligations are material to this agreement. The defendant agrees that any violation of or failure to fulfill these obligations will be a material breach of this agreement. If the defendant Princess breaches this agreement, the defendant understands the United States, in its sole discretion, may withdraw from this agreement and may prosecute the defendant on any charges arising out of the investigation in this matter. Whether the defendant has violated the terms of this agreement will be determined by the Court at an appropriate hearing during which any of the defendant's disclosures will be admissible and the government's burden is by a preponderance of the evidence.

### A. *Summary*

Princess is currently charged with the following offenses in the Information filed by the United States in this case:

> Count 1: Knowingly failing to operate its vessel the Dawn Princess at a slow, safe speed while near two humpback whales in the area of Glacier Bay, Alaska, in violation of Title 50, Code of Federal Regulations

PLEA AGREEMENT
Page 4

Part 224.103(b)(3), Title 16, United States Code,

Sections 1538(a)(1)(B) and 1540(b)(1).

Pursuant to this written plea agreement, Princess agrees to plead guilty to, and to freely and openly acknowledge its responsibility for, the acts and omissions constituting the factual basis for its plea of guilty to Count 1.

**B.** *Fine.*

The parties agree to recommend that a criminal fine in the total amount of $200,000 be imposed on Princess, to be paid in full on the day of sentencing. This is the maximum fine available under the statute to which Princess is pleading guilty.

**C.** *Special Assessment.*

Pursuant to the requirements of Title 18, United State Code, Section 3013(a)(1)(B)(iii), the defendant will pay the special assessment fee of $125.00 at the time of sentencing.

**D.** *Waivers of appellate and collateral attack rights*

Princess understands that by pleading guilty it waives the right to appeal its conviction. The defendant also understands and agrees that as consideration for the government's commitments under this plea agreement, and if the Court accepts this plea agreement and imposes a sentence in conformity with the plea agreement, then it will knowingly and voluntarily waive its right, contained in 18 U.S.C. § 3742, to appeal the sentence or conditions of supervised release imposed. Furthermore, Princess also knowingly and voluntarily agrees to waive its right to

PLEA AGREEMENT
Page 5

collaterally attack its conviction and/or sentence. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to its conviction or sentence alleging ineffective assistance of counsel -- based on information not now known to Princess and which, in the exercise of reasonable diligence, could not be known by the time the Court imposes sentence; and 2) a challenge to the voluntariness of its guilty plea. Princess agrees that if its guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if its sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute Princess on all charges arising out of the investigation of this case for which there is probable cause.

### E. *Waiver of Right to Jury Trial on Sentencing Factors*

Princess, by entering this plea, also waives any right to have facts that the law makes essential to the punishment either (1) charged in the information, (2) proven to a jury, or (3) proven beyond a reasonable doubt. Princess explicitly acknowledges that its plea to the charged offense authorizes the court to sentence it in conformity to the terms stated in this plea agreement.

### F. *Restitution/Community Service.*

As part of this agreement, the parties stipulate and agree that Princess will perform Community Service in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. Section 3553(a). Accordingly, the Parties agree that within ten days after final acceptance of this agreement Princess shall pay a total of $550,000.00 to the National Park Foundation (hereinafter the "Foundation"). The

PLEA AGREEMENT
Page 6

Foundation is a charitable, nonprofit corporation established by Congress pursuant to 16 U.S.C. § 193-19o. It was established to encourage "private gifts of real and personal property" for the benefit of the National Park Service in order "to further the conservation of natural, scenic, historic, scientific, educational, inspirational, or recreational resources for future generations of Americans." Id. at § 19e. The Foundation is empowered to "do any and all lawful acts necessary or appropriate to its purposes," including acceptance and administration of any "gifts, devises, or bequests." Id. at §§ 19g, 19j. The monies shall be used for the purposes set forth above and accounted for to Congress in annual reports required by 16 U.S.C. § 19a. The explicit goal of Princess's community service is to fund environmental projects and initiatives authorized by the Foundation designed for the benefit, preservation and restoration of the environment and ecosystems in Glacier Bay National Park and Preserve, including Humpback Whale research and protection. Inasmuch as the payment to the Foundation is community service by an organization, Princess further agrees that it will not seek any reduction in its tax obligations as a result of this community service payment. Neither will Princess characterize, publicize or refer to the community service as a voluntary donation or contribution. The defendant further specifically agrees to waive all its rights under Hughey v. United States, 495 U.S. 411 (1990) and agrees not to contest such a restitution/community service order.

Princess additionally agrees to serve a period of one-year probation which shall include the payment of $550,000 in community service to the National Park

PLEA AGREEMENT
Page 7

Foundation as a condition of probation. The parties agree, given Princess' operating instructions to their vessels since this violation and mandatory fleet speed restrictions, that the term of probation will expire upon payment in full of the community service amount of $550,000 to the National Park Foundation.

## III.    What the Government Agrees to Do

### A.    *Disposition of Charges.*

In exchange for Princess's plea of guilty to Count 1 of the Information in this case, the United States agrees to not prosecute Princess or any of its related or affiliated companies, officers, crew or employees further for any offense – now known, alleged or suspected – arising out of the subject of the investigation.

Provided, however, if Princess Cruise Line's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if its sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute Princess Cruise Lines on all charges arising out of the investigation of this case for which there is probable cause.

## IV.    Advisement of Maximum Penalties and Conditions of Sentence

### A.    *Maximum Penalties.*

The maximum statutory penalties which may be imposed on an organizational defendant for the charge to which Princess is pleading guilty are as follows:

PLEA AGREEMENT
Page 8

>    1) a period of probation of five years;
>
>    2) a $200,000 fine;
>
>    3) and a $125.00 mandatory special assessment.

### B. *Interest.*

Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

### C. *Community Service Payment.*

The Court will order that the defendant pay the agreed-upon community service payment pursuant to the terms of this agreement.

### D. *Payments.*

All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

## V. Guideline Applications and Sentencing Issues

### A. *Sentencing Guidelines Advisory Calculation*

The parties agree that inasmuch as the count of conviction in this case is a Class A misdemeanor, the advisory United States Sentencing Commission Guidelines apply to the sentencing of this matter. However, the fine-calculation guidelines in Chapter 8, Sections 8C2.1 through 8C2.9 do not apply to this case because the applicable guideline offense level would be calculated under U.S.S.G. Section 2Q2.1, which in not contained in the list set forth in Section 8C2.1. The

PLEA AGREEMENT
Page 9

parties believe that the Community Service obligation contemplated herein satisfies the objectives and requirements of Chapter 8, Part B.

### B. *Binding Plea Agreement and Sentence*

Princess fully understands that by the terms of this plea agreement the Court must either reject the agreement or impose sentence contemplated by the agreement.

## VI. Elements of the Offense

In order to sustain a conviction for knowingly failing to operate its vessel the Dawn Princess at a slow, safe speed while near two humpback whales in the area of Glacier Bay, Alaska, in violation of Title 50, Code of Federal Regulations Part 224.103(b)(3); Title 16, United States Code, Sections 1538(a)(1)(B) and 1540(b)(1), the United States would have to prove beyond a reasonable doubt the following elements:

> **First:** That on the date and location described in the Information, the Princess vessel, Dawn Princess, failed to operate at a slow, safe speed, by maintaining and steadily increasing to a speed in excess of 14 knots,
>
> **Second:** And knowingly did so while in the presence of two Humpback Whales (Megaptera novaenglia).

## VII. Factual Basis for the Plea

The parties stipulate and agree to the truth of the following factual statement:

On the afternoon of July 12, 2001, Princess Cruise Lines' cruise ship the Dawn Princess was in Glacier Bay National Park and Preserve ("the park") ending a day in park waters. At approximately 2:40 p.m., at the mouth of Bartlett Cove several miles inside the park, the vessel slowed to 5 knots so that two park rangers could be transferred from the Dawn Princess to a Park Service boat alongside. After dropping off the rangers, the vessel remained within park waters for twenty-five more minutes until, at 3:05 p.m., it crossed the park boundary and turned north into Icy Strait. During the vessel's transit of Glacier Bay, two licensed Southeast Alaska pilots were aboard, as required by Alaska law. During this transit, one of the pilots, a naturalist, the ship's captain and usual complement of crew were on the vessel's bridge. During the Dawn Princess' travel out of Glacier Bay the weather was clear, the winds were light and the vessel was moving against an incoming tide.

According to passengers and bridge crew, two humpback whales were spotted from the bridge a short time after the rangers were dropped off. When first spotted, the whales were approximately 700 yards (between 1/4 and ½ mile) off the vessel's port (left) bow, headed to the right on a course that could intersect the ship's route. The whales dove and surfaced at least twice as they drew near the Dawn Princess, but did not change course. The Dawn Princess continued accelerating and did not change course. Within 100 yards of the Dawn Princess, one whale "sounded" (dove deep), but the other did not. Just before passing out of sight under the vessel's prow, the second whale appeared to begin a terminal dive.

PLEA AGREEMENT
Page 11

Some persons aboard the ship report feeling the ship shudder, others report no shudder or any other indication that the vessel struck the whale. The naturalist and captain ran to the starboard (right) bridge wing to look for the whales. The captain noticed that the vessel was traveling at 14 knots at this time. The whales were not seen again. The vessel made no report of a possible collision to the National Park Service or any other government agency. The close encounter was not mentioned in the vessel's log and the captain, pursuant to Princess' existing policy, did not preserve the recording of the bridge conduct on the vessel's "black box."

The next day, on July 13, the naturalist e-mailed a colleague, saying she thought the Dawn Princess may have struck a humpback whale the day before. The naturalist related the essential events and added that she thought the ship was traveling at 15-18 knots and was outside the Park boundary when the whale was struck. She wrote that the whales seemed to be unaware of the vessel and that "as the ship passed by there was no sign on the bridge that we might have made contact," though she related being told later by friends below decks that they heard a 'resounding thud."

On July 14, the Dawn Princess captain, in response to a question, told another pilot aboard the vessel that he was uncertain whether the Dawn Princess hit a whale the day before.

On July 16, a Park naturalist discovered a dead, bloated humpback whale floating in Glacier Bay within Park waters, near the area through which the Dawn Princess had transited four days earlier. The carcass appeared to have recently

PLEA AGREEMENT
Page 12

surfaced. The Park Service towed the carcass to Pt. Gustavus, where it was beached pending a necropsy.

On July 22, a marine mammal expert from California examined the whale carcass, finding massive blunt trauma injuries to the right side of the animal's head, including a fractured skull, eye socket and cervical vertebrae, consistent with a vessel collision. A foetal skeleton was found in the whale. The whale was identified from fluke markings as "Whale #68," which had been sighted many times in the past and was known to frequent the area.

On August 6, a vice-president for Princess Cruise Lines called the Park superintendent and said that the Dawn Princess had a close encounter with two whales on July 12, 2001 and the company was investigating the matter. On the same day, Princess Cruise Lines imposed a fleet-wide speed limit of 10 knots for vessels transiting Icy Strait. On August 7, Princess Cruise Lines issued a press release saying the Dawn Princess had a close encounter with a whale, adding that

///

///

///

///

///

///

while it had "no clear evidence that our ship and a whale came into contact, we cannot exclude that possibility, either."

## VIII. Adequacy of the Agreement

Pursuant to Local Criminal Rule 11.2 (9)(A), this plea agreement is appropriate in that it applies the same sentencing provisions that would otherwise be applicable to the defendant's sentence had it gone to trial and had been convicted on Count 1 of the charging instrument. The sentence to be imposed under the terms of this plea agreement will serve to adequately protect the public and reaffirm societal norms, provide for deterrence to the defendant and others, and provide an opportunity for the defendant to rehabilitate its operations.

## IX. Defendant's Agreement and Understanding of the Terms of this Plea Agreement

Princess, being under no compulsion or threats, or promises not otherwise contained in this document or the aforementioned letter from the United States Park Service, and knowing that a Princess representative will be put under oath at the sentencing hearing to tell the truth, does hereby state its agreement to and understanding of this plea agreement as follows:

A. Princess wishes to enter a plea of guilty to Count 1 of the Information, which charges it with knowingly failing to operate its vessel the Dawn Princess at a slow, safe speed while near two humpback whales in the area of Glacier Bay, Alaska, in violation of Title 50, Code of Federal Regulations Part

224.103(b)(3), Title 16, United States Code, Sections 1538(a)(1)(B) and

1540(b)(1).

  B. Princess understands that by pleading guilty it gives up and agrees to

waive the following rights:

- The right to plead not guilty or to persist in that plea if it has already been made;
- The right to a speedy and public trial by a jury on the issues of its guilt;
- The right to object to the composition of the grand or petit jury;
- The right to be presumed innocent and not to suffer any criminal penalty unless and until its guilt is established beyond a reasonable doubt;
- The right to be represented by a lawyer at trial and if necessary to have a lawyer appointed to represent it at trial- Princess understands that it is not waiving its right to have counsel continue to represent it during the sentencing phase of its case;
- The right to confront and cross examine witnesses against the company, and the right to subpoena witnesses to appear on its behalf;
- The right to contest the validity of any searches conducted on its property or person, or the validity of any seizures involving Forfeiture Assets;

  C. Princess is fully aware that if it were convicted after a trial and

sentence were imposed on it thereafter, it would have the right to appeal any aspect

of its conviction and sentence. Knowing this, Princess, through its representative

below, voluntarily waives its right to appeal its conviction. Furthermore, Princess

knowingly and voluntarily agrees to waive its right under 18 U.S.C. § 3742 to

appeal any aspect of the sentence imposed in this case, if the Court accepts this

agreement and imposes a sentence no greater than the statutory maximums

available for this offense. Furthermore, Princess knowingly and voluntarily

PLEA AGREEMENT
Page 15

waives its right to collaterally attack any aspect of its conviction or sentence, except for a challenge based upon ineffective assistance of counsel - based on information not now known by it and which, in the exercise of due diligence, could not be known by it by the time the Court imposes the sentence--which affected either its guilty plea or the sentence imposed by the Court. Princess, through its representative, states that it is fully satisfied with the representation given to it by its attorney, Michael R. Spaan and Barat M. LaPorte. Princess and its attorneys have discussed all possible defenses to the charges in the Information. Princess' attorneys have investigated the case and followed up on any information and issues it has raised with its attorney to its satisfaction and its attorney has taken the time to fully explain the legal and factual issues involved in this case to my satisfaction. Princess, through its representatives, have discussed how its sentence will be calculated under the United States Sentencing Commission Guidelines as well as the statutes applicable to its offense and any other factor that will affect the sentence calculation in its case. As representative for Princess, I have also discussed with counsel the sentencing estimates prepared by the government contained in this agreement and I understand they are binding on all parties to this case, including the court.

  D. As representative of Princess, I further understand that if Princess pleads guilty, there will not be a trial and that the Court will ask me under oath to answer questions about this offense. I understand that I may be prosecuted if I

make false statements or give false answers and may suffer other consequences set forth in this agreement.

E. Princess understands that it has a right to plead not guilty and that no one can force the company to plead guilty. If anyone, including my attorneys, have done or said anything other than what is contained in this agreement I, as representative of Princess, will inform the judge when I stand before him to enter a plea of guilty on the company's behalf.

F. Princess understands that no one, including its attorney, can guarantee the outcome of its case or what sentence the Court may impose if the company pleads guilty. As representative of Princess, I understand that the discussions between Princess and its attorney concerning Princess's sentence exposure will require the Court to impose sentence in conformity with the agreement agreed to by the parties in this case. Princess understands that the Court has the ultimate discretion to determine the sentence to be imposed in my case, but if the sentence deviates in any way from that proposed by the parties Princess is free to withdraw from this agreement. Princess further understands that if the Court sentences it in conformity with this agreement that it is waiving its right to appeal the Court's sentencing decision.

G. Princess understands that anything that it discusses with its attorney is privileged and confidential, and cannot be revealed without permission of Princess. Knowing this, Princess agrees that this document will be filed with the Court.

H.  This document contains all of the agreements made between Princess, its attorney, and the attorneys for the United States regarding this plea of guilty. Aside from this agreement and the aforedescribed letter from the National Park Service, there are no other promises, assurances, or agreements between Princess, its attorney, and the United States that have affected Princess' decision to change its plea or to enter into this agreement. If there were, Princess would so inform the Court. Princess understands that if it breaches this agreement in any way the United States will be free to prosecute it on all charges for which there is probable cause, arising out of the investigation of this case, and to reinstate any charges dismissed pursuant to this agreement.

I.  Princess, though its representative(s), has read this plea agreement carefully and understands it thoroughly. It knows of no reason why the Court should find me, acting as representative for Princess, to be incompetent to enter into this agreement or to enter a plea of guilty on behalf of Princess. As representative for Princess, I understand the consequences of a guilty plea for the company. On behalf of Princess, I enter into this agreement knowingly and voluntarily.

J.  Princess therefore wishes to enter a plea of guilty to Count 1 of the Information, which charges it with Failing to Operate at a Slow Safe Speed When Near Humpback Whales, in violation of 16 U.S.C. §§ 1538(a)(1)(B), 1540(b)(1) 50 Code of Federal Regulations § 224.103(b)(3).

DATED: 1/24/07

Title: /s/ Executive Vice President
On behalf of Princess Cruise Lines,
Defendant

As counsel for the defendant, I have discussed with the above representative for Princess Cruise Lines the terms of this plea agreement, have fully explained the charge to which he is pleading guilty to on behalf of Princess Cruise Lines, and the necessary elements, all possible defenses, and the consequences of such a plea. Based on these discussions, I have no reason to doubt that the Princess Cruise Lines, as a corporate entity, is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the competency of the representative or the corporate decision-making process or the competency of any party on behalf of Princess Cruise Lines to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the competency of Princess Cruise Lines' representative or corporate competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the Court.

Dated: 01/24/07

Michael R. Spaan
Attorney for Princess Cruise Lines

Dated: 01/24/07

Barat M. LaPorte
Attorney for Princess Cruise Lines

On behalf of the United States, the following accept Princess Cruise Lines' offer to plead guilty under the terms of this Plea Agreement.

Dated: 1/25/07

STEVEN E. SKROCKI
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3380
Fax: (907) 271-1500

PLEA AGREEMENT
Page 19

Dated: 1/25/07

ROBERT S. ANDERSON
Special Assistant U.S. Attorney
Senior Trial Attorney
U. S. Department of Justice
Environmental Crimes Section
Environment and Natural
Resources Division

Dated: 1/25/2007

NELSON P. COHEN
United States Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500